UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Norfolk Division

MICHAEL P. GRAFMULLER, #1409325

      Petitioner,

v.                                     Civil No. 2:13CV50

JOSEPH WEGNER,
Director, Air Force Corrections,

      Respondent.

## MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION

Petitioner Michael P. Grafmuller seeks a writ of habeas corpus to resolve alleged constitutional errors underlying his military court-martial convictions. The respondent moved to dismiss Grafmuller's petition, and the matter was referred to the undersigned United States Magistrate Judge pursuant to 28 U.S.C. §§ 636(b)(1)(B) and Rule 72(b) of the Federal Rules of Civil Procedure. Grafmuller never presented some of his claims to the military courts, and therefore the undersigned recommends that the Court find them waived. As for the remaining claims, because the military courts gave full and fair consideration to each of them, the undersigned recommends that respondent's motion be GRANTED and the petition DISMISSED.

## I.    STATEMENT OF THE CASE

On June 1, 2009, Grafmuller was convicted by a general court-martial convened at

Langley Air Force Base. (R. 1108-09). He pled guilty to five specifications violating Article 93[1] of the United States Code of Military Justice ("UCMJ") and four specifications violating Article 134.[2] (R. 1010). The four specifications under Article 134 included two specifications of indecent assault upon subordinate military members and two specifications of communicating indecent language. (R. 1005). The military court sentenced Grafmuller to a dishonorable discharge, two years confinement, and a reduction in pay grade to E-1. (R. 1148).

The evidence supporting the five specifications violating Article 93 and the two specifications of indecent assault violating Article 134 indicated that Grafmuller made inappropriate sexual remarks and physical contact with subordinate female Airmen. (R. 1014-1088). In 2006 and 2007, Grafmuller made several comments to the victims in a sexually harassing manner, including asking the female Airmen about their favorite sexual position, and if they enjoy oral sex. On several occasions he suggested they should engage in sexual intercourse with him. (R. 562-63). On one occasion, Grafmuller physically assaulted a female Airmen by placing his hands underneath her shorts. (R. 566). In a separate incident, he pushed a different Airmen onto her bed, kissed her and attempted to un-tuck her shirt. (R. 562).   The remaining two specifications of communicating indecent language in violation of Article 134 are closely related to contemporaneous state charges to which Grafmuller pled guilty. (R. 1089-1104).

On February 11, 2009, Grafmuller entered an <u>Alford</u> plea in the Circuit Court for the City of Hampton to charges including attempted carnal knowledge, indecent liberties, and solicitation.

---

[1] Article 93 directs that "[a]ny person subject to this chapter who is guilty of cruelty toward, or oppression or maltreatment of, any person subject to his orders shall be punished as a court-martial may direct." 10 U.S.C. § 893.
[2] Article 134 punishes "all disorders and neglects to good order and discipline in the armed forces, [and] all conduct of a nature to bring discredit upon the armed forces." 10 U.S.C. § 934.

2

(R. 1191). The evidence underlying these convictions stemmed from a Hampton Police Department ("HPD") investigation into an alleged prostitute and her associates. (R. 625-629). The suspect prostitute informed HPD that Grafmuller had expressed interest in having sex with young girls. (R. 625). She agreed to cooperate with HPD which then taped conversations in which Grafmuller discussed having sex with a 14-year old cousin named "Areana." (R. 626, 1197-1234). Areana was, in fact, a fictitious cousin who was later impersonated by an undercover HPD officer.

With the suspected prostitute's cooperation, the HPD set up a sting operation with video cameras and voice recorders. (R. 628). After Grafmuller arrived he paid her $100 and discussed with her the ground rules. Id. He then proceeded to the master bedroom with the undercover officer posing as Areana. Id. Police then entered the home and arrested Grafmuller. Id. The Circuit Court for the City of Hampton accepted Grafmuller's plea and on May 18, 2009 sentenced him to a total of 35 years, with 25 suspended. (R. 1191).

The Air Force first charged Grafmuller on July 28, 2008 with six specifications violating Article 93 and nine specifications violating Article 134. (R. 874-75). These charges were investigated at a pretrial Article 32 hearing and eventually referred to a general court-martial on September 8, 2008. (R. 873). The charges were later withdrawn and dismissed without prejudice on November 20, 2008. Id. The government brought amended charges in December 2008, but they were later withdrawn after the trial judge granted Grafmuller's motion requesting the court to order a new Article 32 hearing and referral decision. (R. 869-70). The underlying charges, the conviction of which Grafmuller is challenging in this petition, were preferred on January 22,

2009. (R. 861-62). After an Article 32 hearing these charges were referred to a general court-martial. Id. Grafmuller pled guilty to all nine specifications at the general court-martial convened on Langley Air Force Base on June 1, 2009. (R. 1010). During his plea colloquy, Grafmuller acknowledged, among other things, that he "must serve the term in civilian confinement prior to any confinement imposed by the Air Force for [his] offenses." (R. 1118).

Grafmuller appealed his convictions to the Air Force Court of Criminal Appeals ("AFCCA"), asserting six assignments of error.[3]

(1)    Charge II [Article 134], Specifications 3 and 4 should be dismissed because they arise from substantially the same offenses for which [Grafmuller] had already been tried and sentenced in civilian court and because the Government failed to seek or receive Secretary of the Air Force authorization;

(2)    [Grafmuller's] guilty pleas were improvident because he was mentally incompetent at the time of trial;

(3)    [Grafmuller's] sentence is inappropriately severe given his positive service record and health conditions;

(4)    [Grafmuller's] counsel provided ineffective assistance by improperly pressuring [Grafmuller] to enter guilty pleas, failing to seek and challenge key evidence, and failing to investigate and impeach witness testimony;

(5)    [Grafmuller] received an unfair court-martial as a result of unlawful command influence exercised against Airmen who were potential witnesses on his behalf; and

(6)    [Grafmuller] received an unfair Article 32 hearing and court-martial due to ex-parte communications by the military judge.

(R. 281-304). In a thorough, eleven-page opinion, the AFCCA denied each ground on the merits.

---

[3] The first assignment of error was raised by Grafmuller's defense counsel. The remaining assignments of error were raised by Grafmuller pursuant to United States v. Grostefon, 12 M.J. 431 (C.M.A. 1982). Grostefon allows a military defendant to personally raise issues to the military courts, even if his appellate counsel advises against it. 12 M.J. at 436-37. It also requires the intermediate appellate court to acknowledge that it considered all of the defendant's claims, including those he personally raised. Id. at 436.

(R. 151-161; <u>United States v. Grafmuller</u>, 2011 WL 6010399 (A.F. Ct. Crim. App. March 30, 2011)).

Grafmuller then appealed to the United States Court of Appeals for the Armed Forces ("CAAF"), submitting a petition for grant of review on substantially the same grounds which alleged that the AFCCA erred and argued that:

(1)    Specifications 3 and 4 of Charge II [Article 134] should be dismissed because they are substantially similar to those for which [Grafmuller] was tried and sentenced in civilian court and because the government failed to seek or receive Secretary of the Air Force authorization;

(2)    [Grafmuller's] guilty pleas were improvident due to mental incompetence at the time of trial;

(3)    The sentence of dishonorable discharge is inappropriately severe given [Grafmuller's] positive service record and health conditions;

(4)    Defense counsel provided ineffective assistance by improperly pressuring [Grafmuller] to enter guilty pleas, failing to seek and challenge key evidence, and failing to investigate and impeach witness testimony;

(5)    [Grafmuller] received an unfair court-martial due to unlawful command influence exercised against airmen who were potential witnesses on his behalf;

(6)    [Grafmuller] received an unfair Article 32 hearing and court-martial due to ex-parte communications by the military judge; and

(7)    The Omnibus Crime Control and Safe Streets Act of 1968 was violated when the Article 32 investigating officer considered and the military judge admitted the audio tapes which were obtained in violation of title 18 U.S.C. § 2518.

(R. 144a-147). The CAAF granted the petition to address the sole issue of "[w]hether an Article 134 Clause 1 or 2 Specification that fails to expressly allege either potential terminal element states an offense."[4] (R. 127). After further consideration, the CAAF vacated the decision of the

---

4 The potential terminal elements for Article 134 are "to the prejudice of good order and discipline in the armed

AFCCA and remanded the case to the AFCCA "for consideration of the granted issue in light of United States v. Fosler, 70 M.J. 225 (C.A.A.F. 2011)."[5] (R. 125).

While the case was sitting before the AFCCA on remand, Grafmuller filed a pro se motion to dismiss all convictions under Articles 93 and 134 asserting for the first time that his military sentence should have run concurrent with his state sentence; that speedy trial was violated under the UCMJ; and that the prosecution used forged documents as evidence. (R. 120-121). He also filed a motion for review requesting the AFCCA to set aside the findings of guilt for the four specifications alleging violation of Article 134 and order a rehearing on his sentence. (R. 116-17). The AFFCA's opinion did not address the newly asserted claims, but solely focused on the remanded issue. (R. 43-46; United States v. Grafmuller, 2012 WL 215378 (A.F. Ct. Crim. App. Jan. 9, 2012)). The AFFCA ultimately held that because Grafmuller did not challenge the specifications at trial, entered a guilty plea and acknowledged understanding all of the elements after the military judge explained each element, the specifications were sufficient to charge the crime. (R. 45; 2012 WL 215378 at *2-3).

Grafmuller, proceeding pro se, again appealed to the CAAF, alleging that:

(1)     Counsel was ineffective by:

     (a)     failing to challenge the untimely commencement of [Grafmuller's] court martial;

---

forces" (clause 1) or "of a nature to bring discredit upon the armed forces" (clause 2). 10 U.S.C. § 934.

[5] In Fosler, the CAAF considered a defendant's motion to dismiss which argued that the government's charge of adultery failed to state an offense because the charges failed to allege, either expressly or by implication, one of the potential terminal elements of Article 134. 70 M.J. at 227. The Fosler Court granted the defendant's motion, finding that the use of the word "wrongfully" and inclusion of "Article 134" in the charges did not imply any of the potential terminal elements. Id. at 230-31. In so holding, the Court noted that because the defendant filed a motion to dismiss at trial, it "review[ed] the language of the charge and specification more narrowly than [it] might at later stages." Id. at 232.

> (b) failing to challenge the admissibility of illegally seized oral communications;
>
> (c) failing to challenge the government's use of forged and fraudulent evidence at both the Article 32 hearings and [Grafmuller's] court martial trial;
>
> (d) coersing [sic] the production of [Grafmuller's] guilty pleas;
>
> (e) failing to challenge the Article 93, UCMJ specifications for failure to allege the required elements of threat or promise in addition to repeated sexual comments; and
>
> (f) failing to challenge the obvious defects contained in all 4 of the Article 134 specifications under Charge II;

(2) the [AFCCA] erred when it determined that Specifications 1-4 of Charge II stated an offense under Article 134;

(3) the [AFCCA] erred when it determined that no error prejudicial to the substantial rights of [Grafmuller] occurred when first notice of the terminal elements of disorder and neglect came in the form of questions by the military judge after [Grafmuller] entered his pleas by obviously reading a script;

(4) the military judge abused her descretion [sic] by accepting [Grafmuller's] guilty pleas upon the government's untimely commencement of his court martial;

(5) the military judge erred in allowing [Grafmuller] to enter pleas to defective specifications under Article 93; and

(6) the military judge erred in relying on forged and fradulant [sic] documents to determine [Grafmuller's] guilt.

(R. 24-37a). The CAAF initially denied Grafmuller's petition for grant of review in a one-sentence order. (R. 13). Grafmuller moved for reconsideration, which the Court also summarily denied. (R. 12). He then submitted a Petition for a Writ of Certiorari to the United States Supreme Court, which the Court denied on October 29, 2012. Grafmuller v. United States, 133 S. Ct.563 (2012).

7

Grafmuller filed no claims for habeas relief in military court, but on January 10, 2013,
proceeding pro se, he filed the present federal habeas petition seeking relief under 28 U.S.C. §
2241. (Pet., ECF No. 1). In his 109-page federal petition Grafmuller challenges his military
convictions,[6] arguing that:

   (1)    his right to effective assistance of counsel was denied when counsel:

        (a)    failed to challenge the untimely commencement of Grafmuller's court martial;

        (b)    coerced his unintelligent guilty pleas;

        (c)    failed to challenge the admissibility of recorded conversations;

        (d)    failed to identify and obtain exculpatory evidence;

        (e)    failed to obtain evidence which could have been used to impeach complaining witnesses; and

        (f)    failed to challenge whether all of the elements of each offense were met;

   (2)    he was denied due process when the military judge determined his guilty pleas were voluntary and intelligent when it was clear Grafmuller was coerced to plead guilty and reading from a script;

   (3)    he was denied due process when the investigating officer at his Article 32 hearing:

        (a)    relied on a fraudulent and forged document and did not question all documents provided by the government;

        (b)    allowed major changes to the charges and specifications in the absence of a required repreferral; and

        (c)    failed to identify that the charges and specifications were missing an

---

[6] This Court previously considered and denied Grafmuller's claims for habeas relief on his state conviction and sentence under 28 U.S.C. § 2254. Grafmuller v. Clake, No. 2:12-cv-52, 2012 WL 3150328 (E.D. Va. July 31, 2012). Grafmuller appealed and the Fourth Circuit denied review. Grafmuller v. Clarke, 509 F. App'x 226, 2013 WL 474334 (4th Cir. Feb. 8, 2013).

element and thus did not state an offense;

(4)     his two years of confinement ordered by the military judge ran concurrent to his state sentence and have thus been served;

(5)     the military courts erred in finding that his charge and specifications under Article 93 stated an offense; and

(6)     the military courts erred in denying relief under the four specifications violating Article 134, because they failed to state an offense.

(ECF No. 1 at 35-36, 70, 91, 102, 103, 104-05). On June 3, 2013, respondent filed its Rule 5 Answer and Motion to Dismiss, along with a brief in support. (ECF Nos. 22-23). The Court also received for review the roughly 1,300 page record of Grafmuller's prior proceedings on his military convictions. In accordance with <u>Roseboro v. Garrison</u>, 528 F.2d 309 (4th Cir. 1975) and Local Rule 7(K), Grafmuller was advised of his right to file opposing affidavits, statements, exhibits and legal memoranda, as well as the possible consequences of failing to oppose the respondent's filing. (ECF No. 24). Grafmuller filed a reply, and therefore, the respondent's Motion to Dismiss is ripe for judicial review.

## II. RECOMMENDED FINDINGS OF FACT AND CONCLUSIONS OF LAW

A prisoner who demonstrates he "is in custody in violation of the Constitution or laws or treaties of the United States" may be granted habeas relief under § 2241. 28 U.S.C. § 2241(c). This relief extends to military prisoners, convicted by a court-martial, who may have their petitions reviewed by the federal civil courts. <u>Burns v. Wilson</u>, 346 U.S. 137, 139 (1953). The federal district courts, however, have significantly limited authority to review court-martial proceedings for error. See <u>Lips v. Commandant, United States Disciplinary Barracks</u>, 997 F.2d 808, 810 (10th Cir. 1993); <u>see also Burns</u>, 346 U.S. at 139 (noting that "in military habeas corpus

the inquiry, the scope of matters open for review, has always been more narrow than in civil cases"). The Court's review is initially limited to determining whether the military courts gave the issues raised by the petitioner full and fair consideration. Id. at 810-11. If the military courts fully and fairly considered the issues asserted in the federal habeas petition, "it is not open to a federal civil court to grant the writ simply to re-evaluate the evidence." Burns, 346 U.S. at 142. As explained by the Supreme Court:

> [I]t is not the duty of the civil courts simply to . . . re-examine and reweigh each item of evidence of the occurrence of events which tend to prove or disprove one of the allegations in the applications for habeas corpus. It is the limited function of the civil courts to determine whether the military have given fair consideration to each of these claims.

Id. at 144. Therefore, in cases where the issues have been fully and fairly considered by the military courts, the Court does not consider the merits and should deny the petition. Lips, 997 F.2d at 811. "Only when the military has not given a petitioner's claims full and fair consideration does the scope of review by the federal civil court expand." Id.; see Burns, 346 U.S. at 142 (holding that district courts are empowered to conduct de novo review only if military courts "manifestly refused" to consider the petitioner's claims).

While "full and fair consideration" is the universal standard for military habeas petitions, the Federal Circuits have not developed a uniform analysis to determine what constitutes "full and fair consideration" by the military courts. Armann v. McKean, 549 F.3d 279, 289 n.10 (3rd Cir. 2008) (collecting cases from the different circuits which illustrate the different analytical approaches). The Fourth Circuit, for instance, has acknowledged the "full and fair consideration" test but has not analyzed it in detail. See United States v. Willenbring, 178 F. App'x 223, 224

(4th Cir. 2006) (unpublished). District courts within the Fourth Circuit, however, have adopted the Tenth Circuit's approach to analyzing "full and fair consideration." <u>Miller v. Air Force Clemency and Parole Bd.</u>, No. JFM-10-2621, 2011 WL 4402497, at *9 (D. Md. 2011); <u>Hill v. United States Prob. Office</u>, No. 5:01-HC-807-BR, 2003 WL 24085263, at *2 (E.D.N.C. 2003); <u>Romey v. Vanyur</u>, 9 F. Supp. 2d. 565, 568-69 (E.D.N.C. 1998). As these courts have noted, because the United States Disciplinary Barracks are located at Fort Leavenworth, Kansas, the Tenth Circuit has the most developed and "advanced analysis in this specialized area of the law." <u>Romey</u>, 9 F. Supp. 2d at 569. Like these district courts in the Fourth Circuit, the undersigned finds the Tenth Circuit's precedent instructive and also adopts its analytical approach.

The Tenth Circuit applies a four-part test to help determine whether the federal court may consider the merits of a military habeas case. <u>Dodson v. Zelez</u>, 917 F.2d 125, 1252-53 (10th Cir. 1990) (adopting the four-part test from the Fifth Circuit's opinion in <u>Calley v. Callaway</u>, 519 F.2d 184 (5th Cir. 1975), <u>cert. denied</u>, 425 U.S. 911 (1976)); <u>see also</u> <u>Roberts v. Callahan</u>, 321 F.3d 994, 997 (10th Cir. 2003) (clarifying that the four-part test is meant to aid courts in applying <u>Burns</u> rather than serve as a separate hurdle to be met before review of a military court decision). Before reaching the merits of any claim, the federal habeas court must consider four factors:

> (1) the asserted error is of substantial constitutional dimension; (2) the issue is one of law rather than of disputed fact already determined by the military tribunal; (3) there are no military considerations that warrant different treatment of constitutional claims; and (4) the military courts failed to give adequate consideration to the issues involved or failed to apply proper legal standards.

<u>Lips</u>, 997 F.2d at 811. While each consideration is relevant, the fourth is the most important. <u>Thomas v. United States Disciplinary Barracks</u>, 625 F.3d 667, 671 (10th Cir. 2010). This

11

analysis "place[s] a large amount of discretion in the hands of the federal courts." Dodson, 917

F.2d at 1253. Full and fair consideration does not require the military courts to author a thorough

opinion analyzing the merits of each claim. Thomas, 625 F.3d at 671. Rather, when an issue is

briefed and argued before the military courts it has received full and fair consideration, even if

the court's opinion summarily disposes of the issue without explanation. Watson v. McCotter,

782 F.2d 143, 145 (10th Cir. 1986). Depending on the facts of the case, even less may be

required.

    In Armann v. McKean, for example, the Third Circuit ruled that although the Army Court

of Criminal Appeals ("ACCA") and the CAAF held no oral argument and the CAAF issued only

a one-sentence order affirming the ACCA's decision, the military courts had fully and fairly

considered the petitioner's mental competency claims. 549 F.3d at 293-96. The Court noted that

federal courts must review what occurred procedurally in the military courts and that summarily

disposing of a claim does not mean the issue was not fully and fairly considered. Id. at 292. The

Court found that the one-sentence denial when "teamed with the extensive discussion appearing

in [petitioner's] brief concerning the alleged constitutional violation . . . amounted to full and fair

consideration." Id. at 294-95 (citations omitted) (internal quotation marks omitted). It further

noted that the petitioner had a sufficient opportunity to raise his competency claim at the court-

martial and elected not to do so, and that he had briefed his argument in great detail. Id. at 293.

The petitioner argued that the briefing was not adequate because the government never submitted

a brief addressing his mental competency claim, but the Court found this argument unpersuasive.

Rather, the Court refused to "presume that the highest military court refused to consider the full

record before it prior to making its decision." Id. at 295-96.

In a similar case, Thomas v. United States Disciplinary Barracks, the Tenth Circuit held that the military courts had fully and fairly considered the issues despite the fact that they did not hear oral argument or supply any reasoning supporting the dismissal of the petitioner's claims. 625 F.3d at 671. The Court relied upon the reasoning supplied by the Third Circuit in Armann to find that sixty-five pages of briefing on the issues, thirty pages of which addressed the merits, was sufficient for the military courts to have fully and fairly considered the claims. Id. at 672. Further, like the Third Circuit, the Tenth Circuit "decline[d] to presume a military appellate court ha[d] failed to consider all the issues presented to it before making a decision." Id. The Court did note, however, that in a case with only cursory briefing and no other evidence of full consideration by the military courts, it could reach a different result. Id. But ultimately, the Court found that the thoroughness and adequacy of the briefing, combined with the great deference due to military courts' collateral review of court-martial convictions, demonstrated that the petitioner's claims received full and fair consideration from the military courts. Id.

Finally, a petitioner cannot argue that his claims were not given full and fair consideration by the military courts, if he never presents the claims to the military courts. If a habeas petitioner neither makes a timely objection to an issue nor raises the issue on appeal, then he has waived that claim. Lips, 997 F.2d at 812. To overcome his waiver and obtain habeas review, the petitioner must demonstrate cause excusing the procedural default and prejudice resulting from the error. Id. (citing Wolff v. United States, 737 F.2d 877 (10th Cir. 1984)).

In Grafmuller's case, the government argues that his Claims 1, 2, 3, and 6 were fully and

13

fairly considered by the military courts, and thus should not be considered on the merits in this Court. (ECF No. 23 at 14). The government also contends that Grafmuller waived Claim 4 because he never presented it to the military courts, and Claim 5 because he raised it for the first time only in his second appeal to the CAAF. Id. at 32, 35. Secondarily, the government also detailed why each claim lacks merit. Grafmuller asserts that every issue raised in his petition was properly presented on direct appeal to the military courts. Id. At 35. He purports that the military courts refused to address some of his claims, and that the courts' decisions addressing the other issues were contrary to clearly established federal and military law. Id. The undersigned will address each of Grafmuller's claims in turn.

### 1. Ground 1 – Ineffective Assistance of Counsel

Grafmuller asserts six different grounds of ineffective assistance of counsel. (ECF No. 1 at 35-36). He contends that these claims contain substantial constitutional considerations, mixed questions of law and fact, and no special military considerations. Id. at 37. He further argues that the military courts declined to review these claims at any point. Id. Because the review in this Court depends upon the consideration these claims received by the military courts, and Grafmuller's ineffectiveness claims lack procedural uniformity, the undersigned will address these claims in groups according to their procedural similarities. What is common between all the claims is that each was fully and fairly considered by the military courts. As a result, Grafmuller is not entitled to habeas relief on these grounds.

**A. Claims (a) and (f) – failing to raise speedy trial and object that the elements of the offenses were not established.**

Grafmuller raised these ineffectiveness claims for the first time in his second, post-remand, appeal to the CAAF.[7] The CAAF's summary denial of that appeal constitutes full and fair consideration of these claims. Grafmuller thoroughly briefed these issues in his petition for review with five single-spaced pages detailing his legal and factual contentions (R. 30-31a, 35a-36a), and the CAAF's summary denial was issued "on consideration" of the petition. (R. 13). Thus, like the Armann and Thomas courts, the undersigned declines to presume that the CAAF did not consider the full record before it and recommends that these claims be dismissed.

**B. Claims (b) and (c) – coerced guilty plea and failed to challenge admissibility of recorded conversations.**

Grafmuller raised these claims in his initial brief to the AFCCA and in both briefs to the CAAF. Prior to the CAAF's summary denial, the AFCCA denied Grafmuller's initial appeal with a thorough, written opinion specifically addressing the merits of these claims. (R. 155-57). Though Grafmuller appealed the AFCCA's decision, the CAAF did not grant review of these issues and remanded on other grounds. Additionally, Grafmuller thoroughly briefed both these issues in his second appeal to the CAAF. (R. 31a-33, 33b-35a). Therefore, the undersigned finds that, in light of the AFCCA's detailed opinion and Grafmuller's thorough briefing prior to the CAAF's summary denial, these claims received full and fair consideration by the military courts.

---

[7] Though Grafmuller raised speedy trial issues in his motion to dismiss on remand before the AFCCA, he did not assert it as an ineffective assistance of counsel claim. In his petition, he asserts that he raised this claim in a petition for a writ of prohibition to the CAAF. However, no petition or CAAF ruling on a writ of prohibition appears anywhere in the record. Regardless, the undersigned does not find the existence of a writ of prohibition necessary to the disposition of these claims.

15

Accordingly, the undersigned recommends these claims be dismissed.

### C. Claims (d) and (e) –  failed to obtain exculpatory evidence and impeachment evidence.

Grafmuller raised these claims in his appeal to the AFCCA and in his first appeal to the CAAF but did not raise them in his second appeal to the CAAF. Because he did not raise these issues in his second appeal, it is a tenable argument that they have been waived. Schlesinger v. Councilman, 420 U.S. 738, 758 (1975) ("[F]ederal courts normally will not entertain habeas petitions by military prisoners unless all available military remedies have been exhausted."). However, since both the AFCCA and the CAAF considered these claims, the undersigned finds it is more appropriate to view them as having been fully and fairly considered.

On appeal, both Grafmuller and the government adequately briefed these issues, and the AFCCA's opinion explicitly addressed the merits of each claim. Moreover, the AFCCA noted that it "examined each of [Grafmuller's] post-trial allegations of ineffective assistance of counsel in the context of not only his post-trial assertions, but also his sworn statements at trial and the statements submitted by his counsel in response to his allegations." (R. 157; Grafmuller, 2011 WL 6010399 at *6). When they were briefed on Grafmuller's first appeal, the CAAF did not grant review of these issues, while granting review on the adequacy of the specifications under Article 134. This suggests that the Court found no merit in the ineffectiveness claims raised in the briefing. As such, the undersigned finds that these claims have been fully and fairly considered by the military courts and recommends that they be dismissed.

Under the Tenth Circuit's guidance, full and fair consideration permits the habeas court

16

to consider whether the military court "failed to give adequate consideration to the issues involved or failed to apply proper legal standards." Lips, 997 F.2d at 811. Grafmuller argues generally that the courts examining his multiple appeals misapplied military law. He has not, however, cited any specific error, nor has the Court's own review discovered any which would affect the undersigned's recommendation that his ineffectiveness claims were fully and fairly considered. The AFCCA carefully examined the ineffectiveness claims Grafmuller presented and correctly applied the Supreme Court's two-part analysis under Strickland v. Washington, 466 U.S. 668, 687 (1984). Grafmuller, 2011 WL 6010399 at *4. In essence, Grafmuller urges this Court to examine each claim again, but he has failed to establish any basis for the Court to do so.

### 2.  Ground 2 – Due Process during Guilty Plea proceedings

Grafmuller next argues that he was denied due process when the military judge accepted his "coerced and scripted" guilty plea. He contends that this claim includes substantial constitutional issues, purely legal questions, and no unique military considerations. He also asserts that he raised this claim to the AFCCA, but states that the court denied the claim on a non-constitutional ground. Grafmuller does not mention raising this claim to the CAAF.

Despite his assertion otherwise, Grafmuller's federal petition is the first instance in which he has raised the specific argument that he was denied due process because the military judge accepted his "coerced and scripted" guilty plea. He originally challenged the providence of his guilty plea on direct appeal, arguing that he was mentally incompetent at the time of his plea. He did, however, present similar arguments to the CAAF in his second appeal. In that brief, Grafmuller argued that counsel provided ineffective assistance by coercing his guilty plea. He

17

also argued that the AFCCA erred when it determined that his due process rights had not been violated at his court-martial. He had alleged that he first learned of the terminal elements of the offenses from the military judge's questions at his guilty plea when he claims he was "reading [from a] script as ordered by defense counsel." (R. 27). Although this argument to the CAAF referenced due process and reading from a script, the crux of his argument on appeal was the lack of fair notice of the elements, not due process concerns related to coercion, the scripted nature, or voluntariness of his guilty plea.

Because this is the first instance in which Grafmuller has raised this specific argument, he has waived this issue from federal review. The military courts never had an opportunity to consider this issue. Further, Grafmuller has not demonstrated either cause or prejudice to excuse his procedural default. Since he has waived this claim, the undersigned recommends that the Court dismiss Ground 2.

Furthermore, even if the undersigned were to presume that the issue of whether Grafmuller's guilty plea was voluntary and intelligent had been raised to the military courts, the undersigned finds that it received full and fair consideration through Grafmuller's various overlapping assignments of error, and specifically his arguments on the providence of his guilty plea and the ineffectiveness of his trial counsel. Grafmuller presented concerns about his mental competency at the time of his guilty plea in both his brief to the AFCCA and first brief to the CAAF. In those briefs, he clearly and articulately communicated his argument that due to his depression, codependency, PTSD, and sleep disorders, he lacked the ability to assist counsel and make decisions for himself. (R. 296-97). His counsel thoroughly replied to his allegations by

18

affidavit. They denied that Grafmuller was coerced, and stated that he willfully agreed to plead guilty after a full discussion of his options. (R. 164-72; <u>Grafmuller</u>, 2011 WL 6010399 at *5). After thoroughly addressing the merits of his argument, the AFCCA stated "[h]aving considered his appellate claims of incompetence in light of the entire record with particular attention to his sworn responses during the plea inquiry and his statements during sentencing, we are satisfied that [Grafmuller] was competent at the time of trial." (R. 154; <u>Grafmuller</u>, 2011 WL 6010399 at *3). Additionally, Grafmuller raised a similar argument in his second appeal to the CAAF when he presented the CAAF with over three pages of briefing arguing that counsel was ineffective for coercing his guilty plea. His argument was rejected a second time by the CAAF's summary denial. Thus, were the undersigned to consider the voluntariness of Grafmuller's guilty plea as having been raised, the undersigned would find that issue to have been fully and fairly considered by the military courts and not subject to further review on the merits.

### 3. Ground 3 – Due Process of Article 32 Hearing

In his third claim, Grafmuller contends that he was denied due process at his Article 32 hearing. He specifically asserts that the investigating officer violated due process by relying on clearly fraudulent and forged documents, allowing major changes to the Article 134 specifications without a repreferral, and finding that the Article 93 and Article 134 specifications stated an offense. Grafmuller avers that he raised each of these sub-claims on direct appeal to the AFCCA and the CAAF as stand-alone claims and under his ineffective assistance of counsel arguments. He claims the military courts have avoided considering the issue. He also contends that this claim implicates a substantial constitutional issue, presents a question of law, and

19

requires no special military considerations.

Grafmuller did raise concerns about the fairness of his Article 32 hearing at every stage of his military appeals, but he argued different grounds of support at the different stages of appeal. For example, in his initial appeals to the AFCCA and the CAAF, Grafmuller argued that he received an unfair Article 32 hearing due to *ex parte* communications between the investigating officer and witnesses. These arguments failed, and on remand he argued for the first time that the prosecution used a forged document as an exhibit. And in his second appeal to the CAAF, Grafmuller argued that his counsel was ineffective in failing to challenge the government's use of forged and fraudulent documents at his Article 32 hearing.[8] He also claimed that the military judge erred by relying on forged and fraudulent documents to determine his guilt, but he offered no briefing to support this argument.

At no time in the appellate process did Grafmuller assert any arguments concerning "major changes" to the specifications without repreferral. Further, while Grafmuller has alleged errors concerning the elements of the specifications on multiple occasions, his federal petition is the first in which he has argued that he was denied due process at his Article 32 hearing due to the investigating officer's failure to identify missing elements in the specifications. He has supplied no grounds of cause or prejudice to excuse the procedural default on these sub-claims. Thus, the undersigned finds that these grounds of support for Grafmuller's claim that he received

---

[8] The allegedly fraudulent document to which Grafmuller refers is a memorandum related to a prior Article 15 action. (ECF No. 1-1 at 97). The memorandum appears to be drafted by Grafmuller though it is not signed by him. Having reviewed the document, the undersigned finds that the factual information presented in the memorandum is consistent with other evidence in the record concerning a prior Article 15 action against Grafmuller. The memorandum also casts Grafmuller as a sympathetic figure and highlights his positive service record. Therefore, the undersigned finds that this document does not appear to be either fraudulent or prejudicial to Grafmuller.

an unfair Article 32 hearing have been waived.

As for Grafmuller's broader claim that his Article 32 hearing was unfair and the corresponding argument that the investigating officer relied on forged and fraudulent documents, the undersigned finds that these claims have been fully and fairly considered. The AFCCA's first opinion addressed the fairness of the Article 32 hearing on the merits and rejected Grafmuller's claim. Grafmuller, 2011 WL 6010399 at *7-8. Though Grafmuller appealed the AFCCA's decision, and briefed his Article 32 complaints, the CAAF did not grant review on this issue. Finally, Grafmuller cannot argue that the military courts did not address this issue when he changed his argument at almost every stage of appeal.

Grafmuller thoroughly briefed his argument that counsel was ineffective in failing to challenge the government's use of forged and fraudulent documents in his second appeal to the CAAF. This argument clearly identified the document Grafmuller believed to be forged and the basis of his belief. The undersigned declines to presume that the CAAF did not consider the arguments and record before it, and finds that the military courts fully and fairly considered Grafmuller's claim that his Article 32 hearing was unfair. To the extent he asserts a new claim that the exact same alleged unfairness also violated due process, his claim was waived. The undersigned therefore recommends that this claim be dismissed.

### 4.  Ground 4 – Concurrent Sentencing

Grafmuller next requests the Court to find that he has served his military sentence, because he contends that it has run concurrently with his state sentence which he has been serving since 2009. He argues that federal sentencing is automatically concurrent, and that the

military judge intended his time to be served concurrently with the confinement imposed by the Commonwealth of Virginia. Grafmuller's petition does not reference the Tenth Circuit's full and fair consideration factors for this claim as it did for other claims. Because Grafmuller does not assert that his sentence violates the Eight Amendment or any other constitutional right, it appears that his claim solely involves an interpretation of military law. As such, the undersigned finds that this claim does not raise a substantial constitutional issue and is therefore not subject to review on the merits. See Roberts, 321 F.3d at 997 (noting that federal courts "will only review habeas corpus petitions from the military courts that raise substantial constitutional issues").

To the extent that Grafmuller's claim may raise constitutional concerns, the undersigned finds that he has waived this claim and the claim has no merit. Grafmuller did not raise his concurrent sentencing argument to any court on direct appeal. Rather, his original appeals to the AFCCA and the CAAF claimed his sentence was inappropriately severe in light of his positive service record and health conditions (a claim he apparently abandoned in his habeas filings). That claim was denied by the AFCCA which found that the sentence was not inappropriately severe, and the CAAF did not grant review of this issue. Because Grafmuller has not exhausted his military remedies for this claim and has not proffered either cause or prejudice for his procedural default, the undersigned finds that to the extent Grafmuller's claim is cognizable, it has been waived.

Moreover, even if the Court found that Grafmuller had presented the claim, the undersigned finds that the claim has no merit. The Department of Defense Sentence Computation Manual states:

22

> C2.7.1. A sentence to confinement adjudged by a court-martial <u>shall not be served concurrently with any other sentence to confinement adjudged by a court-martial or a civil court.</u>

DoD 1325.7M § C2.7.1 (July 27, 2004) (emphasis added). Thus, contrary to Grafmuller's claims, his military confinement is presumed to run consecutively to his term in state prison. His claim that the military judge intended his sentence to be served concurrently with the state sentence is not supported by the record. The military trial judge made no mention of how the sentence was to be served in relation to Grafmuller's state sentence. Thus, while <u>Setser v. United States</u>, 132 S. Ct. 1463 (2012), cited by Grafmuller, acknowledges that courts have the discretion to order that a federal sentence run concurrently with a state sentence, in the absence of an exercise of that discretion Grafmuller's will not. Furthermore, Grafmuller himself acknowledged during his guilty plea colloquy that his military sentence was to run consecutive to his civilian confinement. (R. 1118). In this case, the undersigned finds that Grafmuller waived any right to habeas review, which in any event would compel the conclusion that Grafmuller's military sentence is to be served after the completion of his state sentence. For these reasons, the undersigned recommends that the Court dismiss Ground 4.

**5. Ground 5 – Article 93 Elements**

Grafmuller next argues that the military courts erred by refusing to review on direct appeal the defects in the specifications violating Article 93. He contends that the government failed to allege required elements of Article 93 prior to the commencement of his court-martial. He specifically asserts that the government never alleged a: 1) threat or special favors [to the complainant] <u>and</u> 2) repeated unwanted sexual comments to the complainant [sic]. (ECF No. 1

at 103). He claims this violated the notice requirement and further contends that there is no evidence in the record to support either element. Id. 103-04. He argues that these allegedly defective specifications required a new Article 32 hearing, because no major changes can be made to specifications without holding a new Article 32 hearing. Id. at 104.

Grafmuller argues that the military courts avoided this claim on direct appeal. However, he did not raise this claim until his second, post-remand, appeal to the CAAF, and thus he evidently believes that the military courts erred in not addressing this issue sua sponte before then. This claim is procedurally similar to two claims addressed above. As in claims 1(a) and 1(f), Grafmuller first raised this claim in his second appeal to the CAAF. Just as he did for those claims, he clearly briefed the factual and legal contentions supporting this claim in his petition for grant of review to the CAAF after its remand on the terminal element issue for the Article 134 specifications. After the AFCCA upheld the Article 134 specifications, Grafmuller's second petition to the CAAF was summarily denied "on consideration" of the briefs. As with Claims 1(a) and 1(f), the undersigned finds that this claim has been fully and fairly considered by the military courts. For these reasons, the undersigned recommends that this claim be dismissed.

### 6.  Ground 6 – Article 134 Elements

In his final claim, Grafmuller argues that the military courts erred in finding that the four Article 134 specifications stated a proper offense. He claims that the specifications did not state either of the Article's potential terminal elements, disruption to good order and discipline or bringing discredit upon the armed forces. He contends that specifications 1 and 2 do not satisfy either element, because the victims' complaints supporting them went unreported for several

24

months. Grafmuller also argues that specifications 3 and 4 do not meet either element, because his conduct in Hampton occurred on a private telephone call on his personal cell phone and happened off base, out of uniform and without ties to the Air Force.

This claim was repeatedly and thoroughly addressed by the military courts and therefore has been fully and fairly considered. The AFCCA originally addressed this issue in its first opinion after Grafmuller raised the issue on his initial appeal. (R. 158-59; Grafmuller, 2011 WL 6010399 at *6). After the AFCCA denied the claim, Grafmuller filed a petition for grant of review in the CAAF which granted the petition. Upon further review, the CAAF remanded the issue to the AFCCA "for consideration of the granted issue in light of United States v. Fosler." (R. 125). On remand, the AFCCA issued a thorough and detailed opinion distinguishing Fosler and denying Grafmuller's claim. (R. 43-46; Grafmuller, 2012 WL 215378 at *2-3). Acknowledging that the Article 134 specifications did not explicitly allege either potential element, the court held that the specifications were sufficient to charge the crime, because Grafmuller never objected to the specifications after the military judge thoroughly covered the elements of the offenses; acknowledged understanding all of the elements; and explained to the military judge why he believed his conduct violated the terminal elements. Id. In his second petition for grant of review to the CAAF, Grafmuller again raised this issue, in detail, but the Court summarily denied his petition "on consideration" of his briefing. (R. 13).

Much like in Armann and Thomas, the CAAF's summary denial of Grafmuller's second appeal does not diminish the consideration it received from the AFCCA and the detailed and thorough briefing supplied by Grafmuller in his second petition. This Court may not review what

25

the military courts have already fully and fairly considered. Because the military courts have given great attention and consideration to this issue, and Grafmuller identified no error warranting further review, the undersigned recommends that the Court dismiss this claim.

## III. RECOMMENDATION

For the foregoing reasons, the undersigned recommends that Respondent's Motion to Dismiss be GRANTED, and that Grafmuller's petition for a writ of habeas corpus under 28 U.S.C. § 2241 be DENIED and the claim DISMISSED with prejudice.

## IV. REVIEW PROCEDURE

By copy of this Report and Recommendation, the parties are notified that pursuant to 28 U.S.C. § 636(b)(1)(C):

1.     Any party may serve upon the other party and file with the Clerk written objections to the foregoing findings and recommendations within fourteen (14) days from the date of mailing of this Report to the objecting party, 28 U.S.C. § 636(b)(1)(C), computed pursuant to Rule 6(a) of the Federal Rules of Civil Procedure.  A party may respond to another party's objections within fourteen (14) days after being served with a copy thereof.

2.     A district judge shall make a de novo determination of those portions of this report or specified findings or recommendations to which objection is made.

The parties are further notified that failure to file timely objections to the findings and recommendations set forth above will result in waiver of right to appeal from a judgment of this Court based on such findings and recommendations. Thomas v. Arn, 474 U.S. 140 (1985); Carr

26

v. Hutto, 737 F.2d 433 (4th Cir. 1984); United States v. Schronce, 727 F.2d 91 (4th Cir. 1984).

The Clerk shall mail a copy of this Order to the petitioner and to counsel of record for the respondent.

/s/
Douglas E. Miller
United States Magistrate Judge

DOUGLAS E. MILLER
UNITED STATES MAGISTRATE JUDGE

Norfolk, Virginia
August 9, 2013

27

<u>Clerk's Mailing Certificate</u>

A copy of the foregoing Report and Recommendation was mailed this date to each of the following:

Michael P. Grafmuller
#1409325
Green Rock Correctional Center
Correctional Unit
475 Green Rock Lane
Chatham, VA  24531


Joel Eric Wilson
United States Attorney Office
101 W Main St
Suite 8000
Norfolk, VA 23510

Fernando Galindo, Clerk

By

Deputy Clerk

August 9 , 2013

28